**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

UNITED STATES OF AMERICA

v.

HAKEEM OMAR,
IBRAHIM BARRIE, and
SAMUEL BOLAY.

CRIMINAL CASE NO.

1:12-cr-00264-SCJ-RGV

### ORDER FOR SERVICE OF FINAL REPORT, RECOMMENDATION, AND ORDER

Attached is the Final Report, Recommendation, and Order of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and Local Criminal Rule 59(2)(a)-(b). Let the same be filed and a copy, with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for

review by the District Court. Failure to object to this Report and Recommendation waives a party's right to review. Fed. R. Crim. P. 59(b)(2).

Pursuant to Title 18, U.S.C. § 3161(h)(1)(D) and (H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.** The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED** and **DIRECTED**, this 7th day of December, 2012.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

HAKEEM OMAR,
IBRAHIM BARRIE, and
SAMUEL BOLAY.

CRIMINAL CASE NO.

1:12-cr-00264-SCJ-RGV

## MAGISTRATE JUDGE'S FINAL REPORT, RECOMMENDATION, AND ORDER

Before the Court are a motion to sever, [Doc. 52],[1] filed by defendant Samuel Bolay ("Bolay"), and motions for a bill of particulars, [Doc. 50], for additional discovery, [Doc. 51], and to suppress evidence, [Doc. 49], filed by defendant Ibrahim Barrie ("Barrie"), all of which the government opposes, see [Docs. 57, 58, 59, & 60]. For the following reasons, Barrie's motions for a bill of particulars, [Doc. 50], and for additional discovery, [Doc. 51], are **DENIED**, and it is hereby **RECOMMENDED** that Bolay's motion to sever, [Doc. 52], and Barrie's motion to suppress evidence, [Doc. 49], be **DENIED**.

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On August 21, 2012, a grand jury in the Northern District of Georgia returned an eleven-count indictment charging defendants Barrie and Bolay, along with Hakeem Omar ("Omar"), in Count One with conspiring to commit bribery in violation of 18 U.S.C. § 371. [Doc. 1 at 1-6]. Additionally, Barrie is charged in Counts Four, Five, Seven, and Ten with bribery that allegedly occurred on November 9, 2010, March 17, 2011, August 5, 2011, and May 21, 2012, respectively, and defendants Barrie and Bolay are charged in Count Six with bribery that allegedly occurred on April 13, 2011, all in violation of 18 U.S.C. § 201. [Id. at 7-10]. Omar is charged in Counts Three, Eight, and Nine with bribery that allegedly occurred on October 20, 2010, September 15, 2011, and September 20, 2011, respectively, in violation of 18 U.S.C. § 201, and Omar is also charged in Count Eleven with falsely procuring naturalization and citizenship in violation of 18 U.S.C. § 1425(b). [Id. at 7, 9-11].

According to the indictment, at the outset of the conspiracy, Omar was a permanent resident alien, but he subsequently became a naturalized United States citizen on March 17, 2011. [Id. at 3]. However, at all times during the conspiracy, Barrie's application for asylum had been denied, while Bolay had applied for, and been granted, asylum. [Id. at 4]. The indictment alleges that the "Defendants

contacted a Special Agent ('SA') with Homeland Security Investigations under the Department of Homeland Security, working in an undercover capacity, and requested certain immigration benefits," and that the "Defendants paid cash to the SA to receive said benefits." [Id.]. Specifically, the indictment alleges that during an undercover meeting on September 10, 2010, Omar "stated that he would pay $3,500 to SA for SA's assistance in facilitating [his] citizenship naturalization process," and that on September 24, 2010, he paid $1,500 in cash to the SA for the receipt of a letter that he had received from Citizenship and Immigration Services ("CIS"), rescheduling him for a citizenship naturalization ceremony in December of 2010 and that on October 20, 2010, he paid another $1,500 in cash to the SA for the SA's previous assistance. [Id. at 4-5].

In November of 2010, Omar advised the SA that Barrie would pay $4,000 to the SA if he assisted Barrie in securing his release from Immigration and Customs Enforcement ("ICE") custody. [Id. at 5]. On November 8, 2010, the SA met with Barrie at the Atlanta Detention Center and Barrie advised the SA that, with the assistance of Omar, he would pay the SA for the SA's assistance in securing his release from custody, and on the following day, Omar paid the SA $700 in cash for the meeting and agreed to pay $3,300 upon Barrie's release. [Id.]. On January 9, 2011, the SA again met with Barrie at the Atlanta Detention Center, and on January

14, 2011, Omar advised the SA that Barrie's relative, Bolay, would pay $8,000 to the SA for his assistance in obtaining a green card for Bolay. [Id. at 5-6]. Thereafter, on March 17, 2011, Barrie paid the SA $2,000 in cash for the SA's assistance in obtaining a green card for Bolay, and on April 13, 2011, Bolay, with the assistance of Barrie, paid $2,000 in cash to the SA for the SA's assistance in obtaining a green card for Bolay. [Id. at 6]. Finally, the indictment alleges that on August 5, 2011, Barrie paid $3,000 in cash to the SA for the SA's assistance in obtaining a green card for Barrie, and that on May 21, 2012, Barrie paid another $1,000 in cash to the SA for the SA's assistance in obtaining a green card for Barrie. [Id.].

## II. DISCUSSION

### A. Barrie's Motion for Bill of Particulars, [Doc. 50]

Barrie has moved for a bill of particulars regarding the conspiracy charged in the indictment. [Doc. 50]. Specifically, Barrie seeks information regarding what the government "intends to prove" and "the facts which the [g]overnment contends comprise the offense." [Id. at 2]. In particular, Barrie seeks: (1) information concerning when and where he committed any act which the government contends furthered the conspiracy in Counts One and Eight;[2] (2) the names of any co-

---

[2] While Barrie refers to Counts One and Eight as the conspiracy counts, see [Doc. 50 at 4], Count Eight actually charged Omar with bribery that allegedly occurred on September 15, 2011, in violation of 18 U.S.C. § 201(b)(1)(B), see [Doc. 1 at 9].

conspirators or persons that Barrie "acted through" and when and where those co-conspirators or persons committed the acts; (3) the identity of "all known co-conspirators with whom [Barrie] is alleged to have acted to carry out or to attempt to carry out the unlawful acts alleged"; (4) the identity of the person known as "S.A." in the indictment; and (5) the allegations that constitute Count One. [Id. at 4-5]. Barrie contends that because he was incarcerated at the Atlanta Detention Center and therefore "constrained during his alleged 'overt acts' of bribery," the government should "articulate in better detail how he allegedly committed such acts." [Id. at 4]. In its response, the government contends that Barrie has either received the relief that he seeks, or that he is not entitled to it, [Doc. 57 at 4], and the Court agrees.

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court "may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "The purpose of a true bill of particulars is threefold: 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.'" United States v. Reddy, Criminal Action File No. 1:09-CR-0483-ODE/AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010), adopted as modified by 2010 WL 3211029, at *1 (N.D. Ga. Aug. 11, 2010)

(quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985) (citations omitted));

see also United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981); United States

v. Zellner, Criminal Indictment No. 1:09-CR-320-TCB-GGB, 2011 WL 530718, at *9

(N.D. Ga. Jan. 14, 2011), adopted by United States v. Chester, Criminal Action File

No. 1:09-cr-320-TCB-GGB, 2011 WL 529952, at *1 (N.D. Ga. Feb. 4, 2011).

Generalized discovery is not a valid reason for seeking a bill of particulars, Colson,

662 F.2d at 1391; United States v. Davis, 582 F.2d 947, 951 (5th Cir. 1978),[3] and "[a]

bill of particulars may not be used for the purpose of obtaining detailed disclosure

of the government's case or evidence in advance of trial," Zellner, 2011 WL 530718,

at *9 (citation omitted). Further, a defendant is not entitled to a bill of particulars

describing information which is already evident from other sources, such as

elsewhere in the indictment or in discovery. United States v. Rosenthal, 793 F.2d

1214, 1227 (11th Cir. 1986), modified on other grounds by, 801 F.2d 378 (11th Cir.

1986); see also Reddy, 2010 WL 3210842, at *5.

"A bill of particulars may not be used to compel the government to provide

the essential facts regarding the existence and formation of a conspiracy."

Rosenthal, 793 F.2d at 1227. A bill of particulars cannot be used to ferret out

---

[3] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent of the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

additional overt acts not listed in the indictment, as long as the indictment alleges the required number of overt acts under the statute being charged.  See id.; Colson, 662 F.2d at 1391; United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978); United States v. Green, No. 1:08-CR-41-SPM/AK-2, 2009 WL 2589107, at *1 (N.D. Fla. Aug. 17, 2009).  "As applied to a charge of conspiracy, . . . the view virtually universally held is that the defendant is not entitled to particulars regarding the formation of the conspiracy; [the] exact time and place of overt acts and the names and addresses of persons present; the details concerning how and when the conspiracy was formed or when each participant entered the conspiracy."  United States v. Upton, 856 F. Supp. 727, 753 (E.D.N.Y. 1994) (citations omitted); see also United States v. Leiva-Portillo, No. 1:06-CR-350-WSD, 2007 WL 1706351, at *15 (N.D. Ga. June 12, 2007), adopted at *1 (citations omitted) ("Case law is . . . clear that the [g]overnment is not required to identify the exact dates or details of when a defendant or any conspirator joined or withdrew from a charged conspiracy, . . ., or specific acts or overt acts done in furtherance of a charged conspiracy by particular defendants.").

The information sought by Barrie regarding details of his alleged conduct in the conspiracy is beyond the proper scope of a bill of particulars.[4]  See United States

---

[4] Furthermore, although Barrie seeks the identity of any persons or co-conspirators through whom he acted, the government has made clear that it "does not contend that [] Barrie acted 'through' anyone."  [Doc. 57 at 5].

v. Sherriff, 546 F.2d 604, 606 (5th Cir. 1977) (citations omitted) ("The purpose [of a bill of particulars] is not to provide detailed disclosure before trial of the Government's evidence."); Green, 2009 WL 2589107, at *1; United States v. White, 50 F.R.D. 70, 71-72 (N.D. Ga. 1970); see also United States v. Musick, 291 F. App'x 706, 724-25 (6th Cir. 2008) (unpublished) (citations omitted) ("A defendant is not entitled to a bill of particulars if the purpose of the bill is . . . to discover all of the overt acts that might be proven at trial."); United States v. Griesbeck, No. 10-20108-BC, 2011 WL 528579, at *4 (E.D. Mich. Feb. 8, 2011) (internal marks omitted) (finding defendant not entitled to information regarding the "precise nature, character and circumstances of any words uttered or acts engaged in" by him); United States v. Payne, No. 1:09-00009, 2010 WL 3081952, at *3 (M.D. Tenn. Aug. 6, 2010) (finding defendant not entitled to a list of the overt acts that the government alleges he committed in furtherance of the conspiracy); United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (citations omitted) (noting that requests to know the "whens," "wheres," and "with whoms" of acts in conspiracy are routinely denied). Barrie has failed to specify how the detailed information requested is necessary to enable him to prepare his defense, avoid surprise, or plead double jeopardy in a subsequent proceeding. See United States v. Gorel, 622 F.2d 100, 104 (5th Cir. 1979); United States v. Blitch, Criminal Action No. 5:08-CR-40(HL),

2009 WL 973359, at *5-6 (M.D. Ga. Apr. 9, 2009). Accordingly, Barrie's motion for

a bill of particulars, [Doc. 50], is hereby **DENIED**.

## B. Barrie's Motion for Additional Discovery, [Doc. 51]

Barrie also has filed a motion for additional discovery, [Doc. 51], in which he

seeks the "production of the names and dates of birth of the SA and the '[un-named]

public official' in order to obtain any criminal and employment history of these

individual(s) for purposes of impeachment during the trial of this matter," [id. at 2

(alteration in original)]. Barrie also requests "all disclosure concerning the witnesses

the [g]overnment will call at trial, as well as any absent witness as if the witness

actually appeared and testified at trial, to wit: the SA and the '[un-named] public

official' identified in the indictment." [Id. at 3 (second alteration in original)]. Thus,

as the government contends, see [Doc. 58 at 2], it appears that Barrie seeks material

that falls under Giglio v. United States, 405 U.S. 150 (1972),[5] and the Jencks Act, 18

_____

[5] In Giglio, the Supreme Court held that any promise (or similar type of understanding or agreement) made by the government to a witness, in exchange for his or her testimony, must be disclosed to the defendant because it relates to a witness' credibility and motivation to testify. 450 U.S. at 154-55.

U.S.C. § 3500;[6] information relating to the undercover special agent; and a witness list.

District courts possess wide discretion over the discovery process.  See Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996).  Consistent with that discretion, the Court has a standard Pretrial Scheduling Order, issued in this case on September 13, 2012, to govern the discovery process in criminal cases.  [Doc. 32].  This Order provides in relevant part:

> The parties are reminded that pretrial disclosure in criminal cases generally is governed by FED. R. CRIM P. 16 or pursuant to case law, such as *Brady v. Maryland*, 373 U.S. 83 (1963), and that the government ordinarily has no basis upon which to object.  The local rules **require** any party seeking relief through a motion to confer with opposing counsel in an attempt to resolve disputed matters ***prior to*** the filing of motion related thereto.  Moreover, FED. R. CRIM P. 16 directs that the government must produce discoverable material upon only a "request" of the defendant.
>
> Therefore, counsel are **DIRECTED** to **NOT** file any motion for materials or information or other relief that: (1) the opposing party has

---

[6] The Jencks Act codifies the Supreme Court's decision in Jencks v. United States, 353 U.S. 657, 668-69 (1957), in which the Court held that a criminal defendant has a due process right to inspect prior statements of government witnesses for impeachment purposes.  The Jencks Act, however, "does not apply to the statements of non-testifying witnesses," United States v. Schier, 438 F.3d 1104, 1112 (11th Cir. 2006) (citations omitted), and therefore, to the extent Barrie seeks information relating to any absent witnesses, this material is "not covered by the Jencks Act," id. Additionally, Rule 16 of the Federal Rules of Criminal Procedure does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in [the Jenks Act]."  Fed. R. Crim. P. 16(a)(2).

> agreed to provide, or (2) the party is entitled to inspect and copy under applicable criminal rules and case law, **UNLESS** the attorney certifies to the court in writing that: (1) the materials have been requested from the opposing party or the motion for other relief has been discussed with the counsel for the opposing party, and (2) the opposing counsel declines to provide the materials/information/relief requested.

[Id. at 4-5 (internal citation omitted)].

The Pretrial Scheduling Order clearly states that a discovery motion should only be filed where opposing counsel has failed to comply with written requests for information. See [id.]. Thus, Barrie was required to request discovery materials in writing from the government prior to filing his present motion for discovery, see [id.], and he has failed to indicate whether he has done so. Accordingly, Barrie's motion is due to be denied under the terms of the Pretrial Scheduling Order. [Id.].

However, even considering the merits of Barrie's motion, with respect to Jencks materials, the Pretrial Scheduling Order requires the government to comply with the Jencks Act. [Id. at 11]; see also [id. at 10 (strongly encouraging the government to disclose earlier, before the pretrial hearing or trial at which the witness will be called to testify)]. Under the Jencks Act, a criminal defendant is entitled to inspect the statements of government witnesses for impeachment purposes. See 18 U.S.C. § 3500. With respect to timing of the defendant's right to inspect, the Act specifically provides:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a). Moreover, as acknowledged in the Pretrial Scheduling Order, the Eleventh Circuit has explicitly held that a court may not order the disclosure of Jencks material earlier than provided by statute. See [Doc. 32 at 10]; see also United States v. Calderon, 127 F.3d 1314, 1334-35 (11th Cir. 1997) (citation omitted) ("Our precedent on this issue could not be more clear. The government is not required to disclose any statement in its possession until after the witness has testified on direct."); United States v. Harris, 458 F.2d 670, 679 (5th Cir. 1972). Accordingly, Barrie's request for disclosure of Jencks Act materials is due to be denied.

Under the Pretrial Scheduling Order, the government is required to provide Barrie Giglio information "sufficiently in advance of trial to allow [him] to use it effectively," but no later than production of Jencks Act material. [Doc. 32 at 6]. More generally, Eleventh Circuit case law requires such disclosure in time to permit defense counsel to use it effectively in cross-examining the witness at trial. See United States v. Hatcher, No. 2:09-cr-81-MEF, 2010 WL 1197970, at *1 (M.D. Ala. Mar. 23, 2010) (citing United States v. Jordan, 316 F.3d 1215, 1253 (11th Cir. 2003); United States v. Beale, 921 F.2d 1412, 1426 (11th Cir. 1991)); see also United States v.

<u>Bueno-Sierra</u>, 99 F.3d 375, 379-80 (11th Cir. 1996) (per curiam) (finding no prejudice where <u>Giglio</u> disclosure came as late as the middle of trial). Again, the Court sees no reason to depart from the Pretrial Scheduling Order or Eleventh Circuit precedent, and in light of the wide discretion district courts possess over the discovery process, <u>see</u> <u>Harris</u>, 97 F.3d at 506, the Court denies Barrie's request for <u>Giglio</u> discovery at this time.[7] Accordingly, Barrie's motion for additional discovery, [Doc. 51], is hereby **DENIED**.

## C.     <u>Bolay's Motion to Sever, [Doc. 52]</u>

Bolay seeks a separate trial from his co-defendants since he is charged in only Counts One and Six of the indictment. [Doc. 52]. Bolay contends that he will be unduly prejudiced by the presentation of evidence concerning counts of the indictment in which he is not charged and that the jury will be confused and unable to attribute individual actions and charges as to each defendant. <u>See generally</u> [<u>id.</u>]. Bolay also asserts that severance is necessary to avoid unfair prejudice in the event one defendant elects to testify, but the other defendants invoke their right to not

---

[7] Likewise, a defendant in a non-capital case such as here, "is generally not entitled to a list of government witnesses." <u>United States v. Elmer</u>, No. CR 309–016, 2009 WL 4264618, at *2 (S.D. Ga. Nov. 30, 2009) (citations omitted). "However, as a practical matter, it would appear that [Barrie] will be receiving much of this information because of the government's liberal discovery policy and because of the government's obligation to disclose material pursuant to the Jenks Act," which "in essence, moots [Barrie's request]." <u>Id.</u>

testify because the "[t]estimony of one co-defendant will be highly prejudicial in the minds of the jurors as to the guilt or innocence of the other co-defendant." [Id. at 6-7].

"When multiple defendants are indicted, joined offenses must be reviewed initially under the standard set forth under Fed.R.Crim.P. 8(b)." United States v. Jones, No. CR 109-073, 2009 WL 2920894, at *1 (S.D. Ga. Sept. 11, 2009) (citations omitted). "Once Rule 8(b) has been satisfied by the allegations in the indictment, severance is governed entirely by Fed.R.Crim.P. 14, which recognizes that even proper joinder under Rule 8(b) may prejudice a defendant or the government." Id. at *2 (citing United States v. Lane, 474 U.S. 438, 447 (1986)); see also United States v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002). After consideration of the pleadings, the Court finds that joinder of the defendants in the indictment was proper under Rule 8, and severance is not merited under Rule 14 on the present record.

### 1. *Joinder is proper under Rule 8*

"Joinder of parties and defendants under Rule 8 is designed to promote judicial economy and efficiency." United States v. Weaver, 905 F.2d 1466, 1476 (11th Cir. 1990). "Rule 8 'is broadly construed in favor of the initial joinder.'" Id. (citation omitted); see also Zafiro v. United States, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted

together."); Hersh, 297 F.3d at 1241; United States v. Touchet, No. 3:07-cr-90-J-33HTS, 2008 WL 2025322, at *7 (M.D. Fla. May 9, 2008); United States v. Cameron, No. 06-20753-CR, 2007 WL 1696022, at *3 (S.D. Fla. June 12, 2007), adopted at *1 (quoting United States v. Dominguez, 226 F.3d 1235, 1238 (11th Cir. 2000)). Indeed, Rule 8(b) "permits the joinder of [d]efendants in the same indictment if they are alleged to have participated in the same act or transaction, and the general rule is that [d]efendants indicted together should be tried together, especially in conspiracy cases." United States v. Chavez, 584 F.3d 1354, 1359-60 (11th Cir. 2009) (citations and internal marks omitted).

Bolay has not specifically argued that joinder under Rule 8(b) is improper in this case,[8] and the Court finds that the defendants were properly joined because the offenses charged in the indictment involve the same series of acts or transactions pursuant to a common scheme, they share common defendants alleged to have jointly committed some of the acts or transactions, and proof of the offenses will include testimony from some of the same witnesses. See United States v. Brooks, 270 F. App'x 847, 849 (11th Cir. 2008) (per curiam) (unpublished) (finding district court properly denied defendants' motions to sever where they were jointly indicted

---

[8] Bolay's memorandum of law in support of his motion to sever includes a heading stating that the indictment is insufficient to show proper joinder under Rule 8(b), but he offers no argument or authority on this point. [Doc. 52 at 5].

for the same conspiracy); <u>Jones</u>, 2009 WL 2920894, at *1 (joinder of defendants proper where defendants alleged to have participated in the same series of acts or transactions); <u>United States v. Bujduveanu</u>, No. 08-20612-CR, 2008 WL 4558696, at *1 (S.D. Fla. Oct. 10, 2008) (finding joinder under Rule 8(b) proper where defendants were jointly charged in the indictment of a single conspiracy); <u>see also</u> <u>United States v. Gravatt</u>, 280 F.3d 1189, 1191 (8th Cir. 2002).

**2.    *Severance is not warranted under Rule 14***

Although joinder is appropriate under Rule 8, the Court still has discretion under Rule 14(a) of the Federal Rules of Criminal Procedure to sever the defendants and order separate trials if it appears that consolidation of the charges would prejudice a defendant.  Fed. R. Crim. P. 14(a); <u>United States v. Kopituk</u>, 690 F.2d 1289, 1314-15 (11th Cir. 1982).  "In deciding a motion for severance, the Court must balance the right of a defendant to a fair trial against the public's interest in efficient and economic administration of justice."  <u>United States v. Denmark</u>, No. 205CR71FTM33DNF, 2005 WL 2755987, at *2 (M.D. Fla. Oct. 25, 2005) (citation and internal marks omitted).  "More specifically, the Eleventh Circuit has interpreted Rule 14 to require a [d]efendant seeking severance to demonstrate specific and compelling prejudice arising from a joint trial."  <u>Id.</u> (citing <u>United States v. Leavitt</u>, 878 F.2d 1329, 1340 (11th Cir. 1989)).  Bolay has not done so here.

Bolay asserts that severance is warranted due to the possibility of guilt transference resulting from evidence that may be introduced at trial against one or more co-defendants that is unrelated to his own charges.  [Doc. 52 at4].  While a defendant "can show compelling prejudice by demonstrating that the jury would not be able to separate the evidence relevant to each count and defendant," Denmark, 2005 WL 2755987, at *2 (citation omitted), "instructions to the jury which require the jury to consider the evidence separately as to each defendant and count have been held to be adequate safeguards against prejudice due to joinder," id. at *3 (citing Kopituk, 690 F.2d at 1320).  Furthermore, "severance is not required if some evidence is admissible against some defendants and not others and a defendant is not entitled to severance because the proof is greater against a co-defendant." United States v. Jones, No. 1:06-CR-140, 2007 WL 712420, at *4 (E.D. Tenn. Mar. 6, 2007) (citations and internal marks omitted); see also United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993) (citations omitted) ("[J]oint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible.").  Therefore, this claim is without merit.

Although not clearly articulated, Bolay appears to contend that there is a potential Bruton issue should the defendants be jointly tried.  [Doc. 52 at 3-4].  "In Bruton v. United States, the Supreme Court held that a defendant's Confrontation

Clause rights might be violated if, in a joint trial, a codefendant's statement or confession is admitted into evidence against the co-defendant, but the codefendant does not take the stand to permit the defendant's cross-examination." Jones, 2007 WL 712420, at *3 (citing Bruton, 391 U.S. 123 (1968)). Severance, therefore, "might be appropriate if the Government intends to introduce into evidence a codefendant . . . statement, if such statement expressly implicates [d]efendant and if such co-defendant does not take the stand to permit cross-examination." Id. However, Bolay has not identified any specific statement or testimony that may be offered at trial that implicates Bruton.[9]  Thus, Bolay "has not carried his burden of demonstrating a problem under Bruton," and "severance on this basis is not supported by the existing record." United States v. Wilson, No. 10-60102-CR, 2010 WL 2609429, at *8 (S.D. Fla. June 5, 2010), adopted by 2010 WL 2612341, at *1 (S.D. Fla. June 25, 2010); see also United States v. Bane, No. 8:09-cr-352-T-33MAP, 2010 WL 882913, at *3 (M.D. Fla. Mar. 5, 2010). Bolay has failed to establish compelling prejudice such that the Court should exercise its discretion and grant a severance.

---

[9] As for Bolay's argument that he may be prejudiced if one or more of his co-defendants testifies but he elects not to testify, this concern can be adequately addressed through jury instructions and does not require severance. See United States v. Stokes, Criminal No. 10-00244-04-CR-W-DW, 2011 WL 1585601, at *1 (W.D. Mo. Apr. 25, 2011) (rejecting similar argument).

Accordingly, it is hereby **RECOMMENDED** that Bolay's motion to sever, [Doc. 52], be **DENIED** at this time.

**D.**     **Barrie's Motion to Suppress, [Doc. 49]**

Barrie moves to suppress the statements he made to the undercover SA during their encounter at the Atlanta Detention Center on November 8, 2012, and any evidence obtained as a fruit of those statements, contending that the encounter was a custodial interrogation prior to which he did not receive and waive his Miranda[10] rights. [Doc. 49]. The government opposes the motion, arguing that Miranda simply does not apply to the encounter Barrie had with the undercover SA at the Atlanta Detention Center since the SA was posing as a "bad cop" in the course of an investigation, not interrogating Barrie. [Doc. 60 at 2]. For the following reasons, the Court agrees that a Miranda warning was not required.

In Miranda, the Supreme Court held that "the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning." Illinois v. Perkins, 496 U.S. 292, 296 (1990). Thus, "[t]wo requirements must be met before *Miranda* is applicable; the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.'" United States v. Hampton, Criminal Case No.

---

[10] See Miranda v. Arizona, 384 U.S. 436 (1966).

1:11–cr–00410–RWS–RGV, 2012 WL 1354579, at *13 (N.D. Ga. Mar. 5, 2012), adopted by 2012 WL 1354574, at *1 (N.D. Ga. Apr. 17, 2012) (internal marks omitted) (<u>quoting United States v. Perdue</u>, 8 F.3d 1455, 1463 (10th Cir. 1993)). "Custody for purposes of triggering *Miranda* advisements occurs when there has been a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." <u>United States v. Dudley</u>, Criminal Case No. 1:10–CR–075–CAP–RGV, 2011 WL 1100607, at *4 (N.D. Ga. Feb. 3, 2011), adopted by 2011 WL 1060659, at *1 (N.D. Ga. Mar. 24, 2011) (citation and internal marks omitted). Interrogation includes "express questioning or its functional equivalent." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980). The functional equivalent of express questioning consists of "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Id.</u> at 301 (footnote omitted). "In determining whether an exchange was the functional equivalent of an interrogation, the focus of the inquiry is the perception of the suspect, not the intent of the police." <u>United States v. Suarez</u>, 162 F. App'x 897, 901 (11th Cir. 2006) (per curiam) (unpublished) (<u>citing Arizona v. Mauro</u>, 481 U.S. 520 (1987)).

"The Supreme Court has explained that the concern motivating *Miranda* was that the 'interrogation environment' created by the interplay of interrogation and

custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." Id. (internal marks omitted) (quoting Innis, 446 U.S. at 299). "Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." Berkemer v. McCarty, 468 U.S. 420, 437 (1984). Thus, the Eleventh Circuit has "distinguished a custodial interrogation from the 'traditional investigatory functions' of police where the compulsive atmosphere triggering *Miranda* is absent." Suarez, 162 F. App'x at 901-02 (citing Sullivan v. Alabama, 666 F.2d 478, 482 (11th Cir. 1982)).

In Perkins, the Supreme Court rejected "the argument that *Miranda* warnings are required whenever a suspect is in custody in a technical sense and converses with someone who happens to be a government agent." 496 U.S. at 297. The Supreme Court specifically held that "[c]onversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*." Id. at 296. Although the undercover officer in Perkins was posing as an inmate, it is a distinction without a difference in this case since the undercover SA here was posing as a corrupt agent willing to accept a bribe from Barrie and met with him at the behest of co-defendant Omar, distinguishing their encounter from a "police-

dominated atmosphere" of interrogation and coercion where the <u>Miranda</u> warnings

are designed to preserve the privilege against self-incrimination.

The transcript of the conversation between Barrie and the undercover SA

confirms that the encounter was not an "interrogation environment," but instead,

a meeting that was part of the charged conspiracy to bribe the undercover SA to

secure Barrie's release from custody. <u>See</u> [Doc. 60-1]. During their conversation at

the Atlanta Detention Center on November 8, 2010, Barrie and the SA discussed the

agreement to pay the undercover SA for his assistance in securing Barrie's release

from custody and obtaining asylum, as well as co-defendant Omar's role in the plan.

[<u>Id.</u> at 3-6, 14-17]. Thus, when the encounter is viewed from Barrie's perception,

there was no coercion or interrogation, only a conversation to confirm the

arrangements made to bribe the undercover SA for his assistance. Thus, the

encounter between Barrie and the undercover SA was in the course of performing

"traditional investigatory functions" that are not implicated by <u>Miranda</u>.[11] <u>See</u>

---

[11] Barrie's request for a hearing under <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), is likewise due to be denied since the statements he made to the undercover SA were part of the charged criminal conduct, not a confession obtained through coercive interrogation. <u>See</u> <u>United States v. Francisco-Gutierrez</u>, 249 F. App'x 135, 141-42 (11th Cir. 2007) (per curiam) (unpublished) (citation omitted) ("The mere fact that [defendant] was in police custody when he gave his statement does not, alone, establish coercion."); <u>United States v. Thompson</u>, 422 F.3d 1285, 1296 (11th Cir. 2005) (citation and internal marks omitted) (finding that involuntariness under the Fifth Amendment's Due Process Clause requires as a prerequisite coercive government conduct such as "subjecting the accused to an exhaustingly long interrogation, the

Suarez, 162 F. App'x at 901-02 (citation omitted). Since the undercover SA was engaged in an investigatory function, not interrogation or its functional equivalent, he was not required to provide Barrie a Miranda warning, and Barrie's motion to suppress, [Doc. 49], is due to be **DENIED**.

### III. CONCLUSION

For the foregoing reasons and cited authority, Barrie's motions for a bill of particulars, [Doc. 50], and for additional discovery, [Doc. 51], are **DENIED**, and it is hereby **RECOMMENDED** that Bolay's motion to sever, [Doc. 52], and Barrie's motion to suppress evidence, [Doc. 49], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 7th day of December, 2012.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

application of physical force or the threat to do so, or the making of a promise that induces the confession").